# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| THOMAS D., <br><br>　　　　Plaintiff, <br><br>　　　v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] <br><br>　　　　Defendant. | Case No. ED CV 20-01256-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I.　INTRODUCTION

In 2017, Thomas D. ("Plaintiff") applied for Social Security Disability Insurance Benefits, alleging disability beginning February 1, 2009. See Dkt. 16, Administrative Record ("AR") 296-97.[2] After the claim was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative

---

[1] Kilolo Kijakazi was appointed acting commissioner on July 9, 2021 and is substituted in as the correct Defendant. See Fed. R. Civ. P. 25(d).

[2] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

Law Judge ("ALJ"). See AR 208-20. The ALJ conducted a hearing on April 9, 2019. See AR 158-181.

The ALJ denied Plaintiff's claim by written decision on April 19, 2019. See AR 130-46. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2015, and April 24, 2019, a period of more than 12 consecutive months. See AR 135. At step two, the ALJ determined that Plaintiff had the severe impairments of "psoriatic arthritis, diabetes mellitus, fibromyalgia, obesity, lumbar, cervical and thoracic degenerative disc disease, obesity, and depression." AR 136. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 136-37.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with various limitations. See AR 137. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. See AR 140-41. At step five, the ALJ relied on the testimony of a vocational expert to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national economy, including cashier II (Dictionary of Occupational Titles or "DOT" 211.462-010), sales attendant (DOT 299.677-010), and housekeeping/cleaner (DOT 323.687-014). See AR 141-42. Accordingly, the ALJ denied benefits. See AR 142-43.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III. DISCUSSION

The parties dispute whether the ALJ properly considered Plaintiff's subjective symptom testimony. See Dkt. 21, Joint Stipulation ("JS") at 4.

### A. Legal Standard

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Id. The assessment of an individual's testimony by the ALJ is "designed to evaluate the intensity and

persistence of symptoms . . . not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Id. at n.5.

B. **Plaintiff's Testimony and ALJ's Finding**

Plaintiff testified at the hearing as follows. Plaintiff was doing okay until 2015, when he woke up with "screaming pain" coming from his neck down to his fingers. AR 168. He currently experiences pain in his lower back, shoulders, neck, arms, and feet. See AR 161-64. He suffers from diabetes, which is "pretty much controlled" with insulin. AR 162. Plaintiff can sit in a chair for up to 10 minutes at a time but is "always constantly rocking and fidgeting." AR 163. Plaintiff has intense pain in his feet and blisters, which makes it difficult to walk. See AR 164. He can walk for up to 2 blocks and then needs to stop or rest. See AR 164-65. Plaintiff can lift something heavy once a day but then would be done for the day. See AR 165.

Plaintiff works 15 hours a week at his church doing the bulletin and prayer requests. See AR 161. He also takes care of his wife's grandmother, reads the bible, and goes to the store. See AR 166. Plaintiff can do some light cleaning, but it often makes him light-headed. See id. Plaintiff has neuropathy affecting his feet, for which he must wear orthotic shoes. See AR 172. As for his mental health, Plaintiff has been seeing a psychiatrist and taking antidepressants, which help with his depression. See AR 175-76.

The ALJ discredited Plaintiff under the second Trevino step, finding that his statements of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record" and that "the objective record" supported a finding that Plaintiff could perform work-related activities within the RFC. AR 138.

C. **Analysis**

The ALJ's primary finding was that Plaintiff's statements were not consistent with the objective medical record. See AR 138-39. "While subjective

pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

This finding is supported by substantial evidence. Plaintiff testified that he was unable to work due to significant and debilitating pain in his lower back, shoulders, neck, arms, and feet. See AR 161-64. But as the ALJ explained, although Plaintiff's physical examinations revealed tender points consistent with fibromyalgia and range of motion limitations, they did not show motor weakness, significant sensory deficits, or gait abnormality. See AR 138-39 (citing AR 384, 449, 680, 723, 726-27, 797-98). The ALJ further noted that Plaintiff had unremarkable musculoskeletal and neurological examinations. See AR 139. The ALJ cited specifically to Plaintiff's examination in December 2018 by consultative examiner Dr. Herman Schoene. See id. (citing AR 838-40). Dr. Schoene found that Plaintiff could sit and stand without difficulty, had a normal gait, and had a normal and painless range of motion in his neck, back, shoulder, elbows, wrists, hands, hips, knees, and ankles. See AR 839-40. Dr. Schoene also found that Plaintiff had normal motor strength, sensation, and reflexes. See AR 840. The ALJ also cited other examinations from 2018 that showed no significant findings, including cardiac workups that were unremarkable with no findings of ischemia or valvular dysfunction. See AR 139 (citing AR 890-899). The ALJ also highlighted that a December 2018 consultative psychologist concluded that Plaintiff effectively had no work-related limitations from a mental health perspective. See AR 140 (citing AR 828-36).

Plaintiff does not directly confront these records. Instead, Plaintiff criticizes the ALJ for merely summarizing the medical evidence instead of connecting it to Plaintiff's testimony. An ALJ is not required "to perform a

line-by-line exegesis of the claimant's testimony," but must do more than offer "non-specific conclusions that [a claimant's] testimony was inconsistent with her medical treatment." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ did a satisfactory job here. For example, the ALJ explained that Plaintiff's diagnosis of psoriatic arthritis, which accounted for many of his issues, had been well controlled with a regimen of prednisone, methotrexate, and Humira. See AR 138. Additionally, the ALJ pointed out that Plaintiff's chief complaint to Dr. Schoene was neck pain, but that he had an "entirely unremarkable musculoskeletal and neurological examination." AR 139. Plaintiff also criticizes the ALJ's finding in light of his fibromyalgia. See JS at 13-14. But the ALJ did not discount Plaintiff's subjective symptom testimony regarding the severity of his fibromyalgia symptoms solely based on a lack of objective medical evidence. See, e.g., AR 138-39. In any event, a claimant's diagnosis of fibromyalgia does not completely insulate a claimant's subjective testimony.

The ALJ also rejected Plaintiff's testimony because his "level of functioning after the alleged onset date had been somewhat greater than [he] had generally reported." AR 139. An ALJ may use a claimant's daily activities to form the basis of an adverse credibility determination if they are transferrable to a work setting or contradict the claimant's other testimony. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). This finding is likewise supported by substantial evidence. The ALJ referenced Plaintiff's testimony that he could walk for only 2 blocks before needing to stop, rest, and have his wife pick him up. See AR 138 (citing AR 164-65). But as the ALJ pointed out, Plaintiff reported to his treating physician that his pain decreased with movement and that he was walking 7 days a week. See AR 139 (citing AR 445). The ALJ also cited another progress report in which Plaintiff reported that he walks for 30 minutes, twice a week, and that he had recently joined a

gym. See id. (citing AR 644). Additionally, the ALJ noted that despite Plaintiff's allegations of widespread, intense pain, he reported working part-time at his church, where he did the bulletins, scheduling, and sent out prayer requests. See AR 139-40, 830 ("He reports that he does the bulletins, scheduling and sending out prayer requests. He states that it is going okay and 'I love it.'"). Plaintiff also testified that he was able to care for his wife's elderly grandmother who has Alzheimer's disease. See AR 139, 166. That Plaintiff was able to work in this capacity formed a valid basis for discrediting his subjective symptom testimony. See Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) (affirming the ALJ's adverse credibility finding where the claimant "worked part-time for nearly another year after his alleged disability onset date").

      Plaintiff contends that the fact that he can participate in "basic human function 'is not determinative of disability.'" JS at 15-16 (quoting Magallanes v. Bowen, 881 F.2d at 756. The Court does not disagree, and it is evident from the record that Plaintiff had difficulties in his activities of daily living. But "[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded by regulation on other grounds. Such is the case here. The ALJ could reasonably conclude that Plaintiff's activities, including working part-time at his church, taking care of his wife's grandmother, participating in light exercise, and going to the store, among other things, undermined his claims that he was incapable of all work without suffering from debilitating pain. See Bray v. Comm'r of SSA, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming ALJ's credibility finding where, among other things, claimant had recently been employed).

Last, the ALJ found that, despite his allegations of pain, Plaintiff reported improvement in his symptoms from trigger point injections, physical therapy, and a mixture of prescription drugs. See AR 138-39. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for benefits. Warre v. Comm'r, SSA, 439 F.3d 1001, 1006 (9th Cir. 2006); see also Cindy F. v. Berryhill, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("[E]vidence of effective treatment may support an ALJ's rejection of symptom allegations.").

This finding is supported by substantial evidence. The ALJ noted that Plaintiff's back pain was well managed with lumbar facet injections, see AR 697 ("Today pain level is 4/10. Improvement from the last injection, worked well for 7 months."), he reported improvement of neck pain with physical therapy, see AR 426 ("Reports 0/10 pain post treatment."), 487 ("Reports pain decrease to 2/10 post treatment."), his medications provided a significant benefit, see AR 789 ("When he started humira, the improvement was dramatic. . . . Overall, [psoriatic arthritis] is well controlled on humira."), and that his diabetes was effectively controlled with treatment, see AR 433-34 ("[Plaintiff] denies any episodes of hypoglycemia" and "tolerates all medications well.").

Plaintiff contends that his injections "are simply not evidence of conservative treatment." JS at 11. But the ALJ's only comment about conservative treatment was a reference to Plaintiff's VA treatment records, not his epidural injections. See AR 139 ("Notes in 2018 from the VA indicate that the claimant has continued conservative management for all of his medical issues without flare-ups or acute complications."). Plaintiff also argues that his temporary improvements should have been interpreted with an awareness that improved functioning while being treated "does not always mean that a claimant can function effectively in a workplace." JS at 12. But the ALJ

8

explicitly noted that some of Plaintiff's improvements were temporary and crafted an RFC to account for his limitations: "[F]urther limiting the claimant to occasional postural activities and placing a restriction on the claimant's ability to reach, push and pull is warranted based on his cervical spine and shoulder conditions, as well as history of obesity. . . . [T]he medium [RFC] assessment made by Dr. Schoene is overly optimistic based on the diagnostic records and the claimant's history of treatment for musculoskeletal pain." AR 140. Plaintiff does not detail what other limitations follow from his bouts of temporary improvements besides what is already listed in the RFC. The Ninth Circuit has rejected "any invitation to find that the ALJ failed to account for [a claimant's] injuries in some unspecified way." Valentine v. Comm'r, SSA, 574 F.3d 685, 692 n.2 (9th Cir. 2000).

Accordingly, the ALJ gave clear and convincing reasons in support of the adverse credibility finding.

## IV. CONCLUSION

The decision is the Social Security Commission is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: July 15, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge